UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TAB-N-ACTION, INC. | CIVIL ACTION NO. 17-00570 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MONROE CITY SCHOOL BOARD | MAG. JUDGE KAREN L. HAYES |

# RULING

On April 25, 2017, Plaintiff Tab-N-Action, Inc., d/b/a Excellence Academy (hereinafter "Excellence Academy") filed a verified Complaint seeking declaratory and injunctive relief against the Monroe City School Board ("MCSB"). [Doc. No. 1]. Excellence Academy moves the Court for a preliminary injunction "prohibiting [MCSB] from revoking [Excellence Academy's] charter without compliance with La. Admin. Code[, Title] 28[, Part] CXXXIX [§] 1703" and a declaratory judgment that Excellence Academy "has complied with its obligations under the charter contract with the [MCSB] and the requirements of Louisiana statutes and regulations."[1] [Doc. No. 1, ¶¶ 24 & 28].

On May 17, 2017, Excellence Academy filed a Motion for Temporary Restraining Order ("Motion for TRO") [Doc. No. 6] contending that MCSB should be prohibited "from executing its plan or taking any action to close Excellence Academy before there has been notice and an opportunity for hearing on [MCSB's] decision to discontinue funding Excellence Academy in violation of the contract . . . and the constitutional requirement of due process . . . ."

---

[1] The Court's review at this time is limited to Excellence Academy's motion for preliminary injunction. The Court expresses no opinion on its request for a declaratory judgment.

MCSB filed a memorandum in opposition to Excellence Academy's Motion for TRO and motion for preliminary injunction. [Doc. No. 12].

Excellence Academy filed a supplemental memorandum. [Doc. No. 10].

On May 23, 2017, the Court conducted an evidentiary hearing, hearing testimony from the parties' witnesses, received evidence, and heard oral argument from counsel.

After consideration of the entire record presented, for the following reasons, Excellence Academy's request for preliminary injunctive relief is GRANTED IN PART and DENIED IN PART, and its Motion for TRO is DENIED AS MOOT.

## I. FINDINGS OF FACT

The Court finds the following facts to be established.

Plaintiff Tab-N-Action, Inc., operates a Type 1 charter school in Monroe, Louisiana, under the name Excellence Academy. Type 1 charter schools are authorized by the local school board, which, in this case, is MCSB.

Excellence Academy is a middle school serving grades 6-8 and began operation in the 2013-2014 school year.

MCSB contracted with TenSquare, LLC ("TenSquare")[2] in January 2017 to conduct a charter

---

[2]According to its website,

TenSquare is a national charter school support organization that works alongside schools and staff to make lasting and measurable change. Based in the District of Columbia, with an office in New Orleans and projects in nine other states, TenSquare has practice areas in school performance, talent services, facility development, and authorizer/agency support. TenSquare team members bring academic, operational and management expertise from top tier schools, networks, CMOs and state agencies from around the country.

http://www.thetensquaregroup.com/about/what-we-do (last visited 05/23/17). As part of its

contract extension review of Excellence Academy as provided for under Louisiana Revised Statutes §§ 17:3992(A)(1) and 17:3998 and Louisiana Administrative Code §§ 1301 and 1303.

On or about February 14, 2017, TenSquare representatives, Kathleen Padian and Sarah Morgan Ripski, visited Excellence Academy, met with the principal, toured the school, and observed in the classrooms. The reviewers attempted to attend a Board meeting the day before touring the school, but the meeting was cancelled. They were also unable to meet with the Executive Director, Roosevelt Wright ("Wright"). According to Wright, he was in the building, but not present because they arrived earlier than anticipated, and they declined the principal's offer to contact him.

On April 5, 2017, TenSquare prepared a report to the MCSB, recommending that its contract with Excellence Academy not be extended for a fifth year based on its determination that the school was unsatisfactory in certain areas.

On April 6, 2017, Dr. Brent Vidrine, Monroe City Superintendent, sent a letter to Regina Millican at Excellence Academy, notifying her the results of TenSquare's evaluation "may" be on the agenda for the MCSB meeting on April 11, 2017. [Exhibit P-3]. An official copy of the TenSquare report was not provided to the school until the day before the meeting, although a MCSB member had given the school a copy a day or two earlier. Excellence Academy Representatives Wright, Chairman/President Charter School Board of Directors Robert Tanzie, Robert Wright, Jackie Johnson, and the school's accountant/bookkeeper, Rosie Harper, were all present at the meeting. When this item was presented on the agenda, MCSB went into Executive Session. After the

---

services, TenSquare "partners with Federal, State, and Local School District and Independent Authorizers to provide . . . research, policy review and development, third party application review, annual and high stakes charter reviews, and other support related to charter compliance and accountability. TenSquare is the national leader in providing receivership services for charter school authorizers." *Id.*

members returned, they voted 5-2 not to extend the charter for the fifth year.[3]

The representatives were not invited to speak or asked to respond to the report, either before or after the Executive Session. All members of the public can speak on items on the agenda, but they must sign a list. Each person who signs the list has 3 minutes to speak on the agenda item. None of the Excellence Academy representatives signed the list and, therefore, were not permitted to speak.

In an April 24, 2017 letter to Dr. Vidrine, Wright addressed Excellence Academy's disappointment and dissatisfaction with MCSB's reliance on the TenSquare report without allowing the school representatives to respond and provided a copy of the report with the school's response to each area of concern. The parties dispute whether Ten Square used the proper rubric for its evaluation of the school.[4] However, Dr. Vidrine and/or MCSB[5] declined to reconsider, and no hearing was held to allow Excellence Academy to present evidence of its compliance with the charter agreements and state requirements.

After MCSB declined to extend Excellence Academy's charter, Dr. Vidrine sent a letter to the parents of Excellence Academy students stating that the school is closing and that they need to make other arrangements by June 30, 2017.[6] [Exhibit P-7].

---

[3]The minutes state that MCSB voted 5-2 "not to renew the charter for the fifth year." [Exhibit P-4]. Despite this language, the Court finds, as discussed, *infra*, that this was not a charter revocation as that term is used under state law.

[4]The Court need not reach this issue.

[5]Dr. Vidrine did not "poll" MCSB members about the request for reconsideration, but, given the status of the case, MCSB appears to have ratified his response to Excellence Academy.

[6]The parties also presented evidence regarding the transfer of funds from MCSB to Excellence Academy and communication issues between Excellence Academy and MCSB staff

## II. CONCLUSIONS OF LAW

The Court makes the following conclusions of law.

In determining whether to grant or deny a preliminary injunction, the Court applies a four-part test:

(1) a substantial likelihood that plaintiff will prevail on the merits;

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant; and

(4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). "A preliminary injunction is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (citing *Mississippi Power & Light v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985); *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 389 (5th Cir. 1984)). Failure of the movant to establish any one of the four factors defeats the right to injunction. *See Rohoe, Inc. v. Marque*, 902 F.2d 356 (5th Cir. 1990).

### A. Likelihood of Success on the Merits

To determine whether Excellence Academy has a likelihood of success on the merits, the Court must look to the cause alleged. Excellence Academy brought this action pursuant to 42 U.S.C. § 1983, claiming that it suffered a deprivation of its property rights under the Fourteenth Amendment

---

after Excellence Academy obtained legal representation. However, these issues are not relevant to the limited issue before the Court at this time–whether Excellence Academy is entitled to injunctive relief based on a deprivation of its property interest without procedural due process.

without benefit of procedural due process.

The Due Process Clause of the Fourteenth Amendment provides in relevant part that no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND XIV. To prevail on a § 1983 claim for deprivation of procedural due process, a plaintiff must first demonstrate the existence of a property interest[7] that is protected by the Due Process Clause. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Property interests are not created by the Constitution, but are created and defined by rights under state law that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Bishop*, 426 U.S. at 344; *Wallace v. Shreve Memorial Library*, 97 F.3d 746, 748 (5th Cir. 1996). Property interests "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936-37 (5th Cir. 1995) (citing *Perry v. Sindermann*, 408 U.S. 593, 599-601 (1972)); *see also Roth*, 408 U.S. at 571-72, 577. A property interest is more than "an abstract need or desire," or a "unilateral expectation," but instead is a "legitimate claim of entitlement." *Perry*, 408 U.S. at 602.

However, the Supreme Court has made clear that a property interest cannot arise from the process itself:

> . . . this Court observed that "[t]he categories of substance and procedure are distinct . . . . 'Property' cannot be defined by the procedures provided for its deprivation." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Just as a State cannot diminish a property right, once conferred, by attaching less than generous procedure to its deprivation, *ibid.*, neither does a State create a property right merely by ordaining beneficial procedure unconnected to some articulable substantive guarantee. This is not to say that state rules of executive procedure may not provide significant reasons to infer an articulable property right meant to be protected; but it is to say that we have not identified property with

---

[7] Excellence Academy does not allege that it was deprived of a liberty interest.

6

procedure as such. State rules of executive procedure, however important, may be nothing more than rules of executive procedure. Thus, in every instance of property recognized by this Court as calling for federal procedural protection, the property has been distinguishable from the procedural obligations imposed on state officials to protect it. Whether welfare benefits, *Goldberg v. Kelly*, 397 U.S. 254 . . . (1970), attendance at public schools, *Goss v. Lopez*, 419 U.S. 565 . . . (1975), utility services, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 . . . (1978), public employment, *Perry v. Sindermann*, 408 U.S. 593 . . . (1972), professional licenses, *Barry v. Barchi*, 443 U.S. 55 . . . (1979), and so on, the property interest recognized in our cases has always existed apart from state procedural protection before the Court has recognized a constitutional claim to protection by federal process.

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 771-72 (2005).

Excellence Academy argues that it has a property interest in its continued operation for a fifth year. It points to the language of the charter agreement with MCSB and the state statutes and administrative code with regard to charter schools.[8] Excellence Academy argues further that MCSB failed to comply with the very statutes and administrative code provisions upon which it relies.

MCSB responds that the state statute and administrative code and charter agreement only assured Excellence Academy of four years of operation, not five. The fifth year of operation was contingent upon a successful evaluation after the third year of operation, and, under the Louisiana Administrative Code, it had no discretion to continue to allow Excellence Academy to operate.[9]

---

[8]To the extent that Excellence Academy originally cited to provisions of state statute and the administrative code governing charter revocations, the Court agrees with MCSB that these provisions are inapplicable to MCSB's decision declining to extend Excellence Academy's charter and to terminate the governing charter agreement.

[9]MCSB also asserted for the first time at the hearing that the State of Louisiana is a necessary party to these proceedings, and the Court should consider abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Excellence Academy was not given a real opportunity to address these arguments, but, regardless, the Court disagrees. Excellence Academy does not attack the facial validity of the statute statutes or administrative code, only MCSB's failure to provide it with due process, and the Court, for the reasons set forth below, rejects MCSB's interpretation of the administrative code. Further, the Court finds that abstention under *Burford* is not appropriate in this case:

Keeping in mind that Excellence Academy's property interest must stem from state law, the Court turns to a review of the applicable statutes, administrative code provisions, and charter agreement. Louisiana Revised Statute § 17:3992A(1) provides:

> Unless revoked as provided for in Subsection C of this Section, an approved school charter shall be valid for an initial period of four years and **may be extended for a maximum initial term of five years**, contingent upon the results of a review conducted after the completion of the third year as provided in R.S. 17:3998. . .

(emphasis added). Additionally, La. Rev. Stat. § 17:3998B provides

> Each charter school shall be reviewed by its chartering authority after the completion of the third year. If the charter school is achieving its stated goals and objectives pursuant to its approved charter, then the chartering authority **shall extend** the

---

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 . . . (1959). "(I)t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n. v. Southern R. Co.*, 341 U.S. 341, 361 . . . (1951) (Frankfurter, J., concurring in result). Our decisions have confined the circumstances appropriate for abstention to three general categories. (a) Abstention is appropriate "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law[.]" . . . . Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. . . . Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-16 (1976). The third category is clearly inapplicable, and, given the Court's limited role in this case, the time sensitive nature of Excellence Academy's motion for injunctive relief, and the lack of pendency of any state court action, the Court finds that the first two categories are also inapplicable.

**duration of the charter for a maximum initial term of five years** as provided in R.S. 17:3992(A)(1). If the charter school is not achieving its stated goals and objectives pursuant to its approved charter, then the chartering authority shall not extend the duration of the charter, and the charter shall expire at the end of the school's fourth year.

(emphasis added). Louisiana Administrative Code, Title 28, Part CXXXIX, Section 1301, interpreting these statutes provides:

> A. An approved charter shall be valid for an initial term of four years.
>
> B. A charter operator shall have a right to operate a charter school during its initial four year term unless the charter is revoked or surrendered.
>
> C. A charter operator's right to operate a charter school shall cease upon the expiration of the initial four year term unless the charter operator is granted an extension to operate for a fifth year.

Section 1303 explains further:

> Each charter school shall be reviewed by its chartering authority after the completion of the third year of operation. If the charter school is achieving its stated goals and objectives pursuant to its approved charter, then the chartering authority **shall extend the duration of the charter for a maximum initial term of five years**. If the charter school is not achieving its stated goals and objectives pursuant to its approved charter, then the chartering authority shall not extend the duration of the charter, and the charter shall expire at the end of the school's fourth year.

28 La. Admin. Code, Pt. CXXXIX, § 1303A (emphasis added). Finally, the charter agreement between MCSB and Excellence Academy provides:

> The term of this Agreement **shall be five years, expiring on June 30, 2018, unless terminated or extended pursuant to the terms hereof**. Approval to operate during the fifth year of the initial term shall be contingent upon the results of a review conducted after the completion of the third year as provided for in state statute LSA-R.S. 3998.

[Doc. No. 1-2, § 1.4 (emphasis added)].

The Court notes, first, that Excellence Academy has no property interest in the procedural

9

aspects of charter school laws. Thus, the failure of MCSB, if any, to comply with state-mandated procedures, does not give rise to Excellence Academy's Due Process claim.[10]

However, the Court finds that Excellence Academy has met its burden of establishing a substantial likelihood of success on the merits based on its property interest in a fifth year of operation under the current charter and charter agreement. Although La. Rev. Stat. § 17:3992A uses the term "may extend" when referring to a fifth year of operation, every other statute, administrative code, and the charter agreement itself all use the term "shall." The charter agreement states even more forcefully that the term "shall be five years." To be sure, all of these provisions also have a condition or caveat that Excellence Academy be achieving its stated goals and objectives at the time of review. Nevertheless, as MCSB concedes, if Excellence Academy is meeting its stated goals and objectives, then MCSB has no discretion, but **must** extend the charter and charter agreement for a fifth year. Nothing in state law–either the statute or code provisions-- requires MCSB to accept the evaluation of TenSquare blindly or without the opportunity for Excellence Academy to respond. If the Court were to accept MCSB's argument, then an evaluation that is based on demonstrably and objectively false information would have to be accepted, even if MCSB knows this information is wrong. The Court rejects this contention. Accordingly, the Court finds that Excellence Academy has established a substantial likelihood of success on the merits of its claim that it had a legitimate

---

[10]Under La. Rev. Stat. 17:3992A(1), Excellence Academy argues that MCSB had to give it notice by January 31, 2017, of MCSB's intent to terminate or to decline to extend the charter and charter agreement for a fifth year. *See id.* ("The chartering authority shall notify the chartering group in writing of any decisions made relative to the renewal or nonrenewal of a school's charter not later than January thirty-first of the year in which the charter would expire. A notification that a charter will not be renewed shall include written explanation of the reasons for such non-renewal."). MCSB argues that this provision is inapplicable to the current situation because it replies only to renewals after the initial term. The Court need not reach these arguments and thus expresses no opinion.

expectation of operating for a fifth year if it met its stated goals and objectives.

**B.    Irreparable Harm or Injury**

The second factor requires Excellence Academy to demonstrate that it would suffer irreparable harm if its motion for injunctive relief is denied. Irreparable harm requires a showing that: (1) the harm to the plaintiff is imminent, (2) the injury would be irreparable, and (3) the plaintiff has no other adequate legal remedy. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). In general, a harm is irreparable if there is no adequate remedy at law, such as monetary damages. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir.1975). It is only when "the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Chisom v. Roemer,* 853 F.2d 1186, 1189 (5th Cir. 1988).

The Court finds that Excellence Academy has established this factor. If injunctive relief is not granted, the school will be closed, and the students displaced. Further, as counsel for MCSB acknowledged at the hearing, it does not appear that Excellence Academy has any available rights or remedies under a state administrative proceeding.

**C.    Threatened Injury to Plaintiff versus Threatened Harm to Defendant**

Next, the Court must balance the hardships between the parties by determining whether the threatened injury to the plaintiff outweighs the potential harm the injunction causes the defendant.

The Court finds, that, on balance, Excellence Academy has met this showing as well. If the Court grants the requested injunction, MCSB must hold a hearing within a short time period and potentially is delayed in allocating students to the other schools in the District if it again reaches the decision to close Excellence Academy. However, the potential injury to Excellence Academy is far

11

greater because it will be closed, and it is too late for the school to try to obtain a charter from the Louisiana Board of Secondary and Elementary Education for the upcoming school year.

### D. Public Interest

Finally, the Court must consider whether the granting of the injunction will not disserve the public interest. The Court finds that it will not. The granting of the injunction will allow Excellence Academy's constitutional rights to be protected, but the hearing will take place in time for parents to make a decision on where to send their children to school.

### E. Relief to be Granted

The Court has found that Excellence Academy has established all four factors to support the issuance of an injunction to protect Excellence Academy's property interest in the operation of the school for a fifth year under its charter. The Court must now address what relief is appropriate.

"[O]nce it is determined that a property interest exists under state law, then, to determine what process is due for purposes of the due process clause of the Fourteenth Amendment, federal law must be looked to." *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985) (citing *Cleveland Board of Education v. Loudermill*, 105 S.Ct. 1487, 1492-93 (1985)). In examining this question, the Supreme Court has recognized that "the interpretation and application of the Due Process Clause are intensely practical matters and that '(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Goss v. Lopez*, 419 U.S. 565, 577-78 (1975) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

In this case, the Court finds that Excellence Academy has now been given a copy of the TenSquare report upon which MCSB's decision was based. They have had time to review the report, and they know what witnesses and evidence they may need to present to MCSB. Therefore, the

practical solution is to set a hearing as quickly as possible, at which time Excellence Academy can present its case, and MCSB can then consider whether to extend the operation of the school for a fifth year.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Excellence Academy has meet its burden and is entitled to a preliminary injunction. Its motion for a preliminary injunction, contained in its Complaint [Doc. No. 1], is GRANTED IN PART and DENIED IN PART. The Court finds that Excellence Academy has met its showing for the issuance of a preliminary injunction and that it is entitled to a due process hearing. To this extent, the motion for preliminary injunction is GRANTED, and MCSB is ENJOINED from taking further action to close or discontinue funding Excellence Academy for a fifth year until a hearing is held. The Court ORDERS that MCSB convene a hearing to be held at a mutually agreeable date and time, but no later than June 7, 2017. At that time, Excellence Academy shall be permitted to present evidence and witnesses to support its contention that it has complied with the requirements of the applicable statutory, administrative code, and charter agreement provisions. However, to the extent that Excellence Academy asserted in the Complaint that it was entitled to the procedures set forth in 28 La. Admin. Code, Pt. CXXXIX, § 1703, the motion is DENIED.

Excellence Academy's Motion for TRO [Doc. No. 6] is DENIED AS MOOT.

MONROE, LOUISIANA, this 24th day of May, 2017.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE